## TERRITORY OF HAWAII v. CHEONG KWAI.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 18, 1903.     DECIDED NOVEMBER 11, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

An objection to the competency of a witness offered by the Territory, in a criminal prosecution, on the ground that she was the wife of defendant, being referred to the trial Judge for decision as a "question of fact" was, after hearing testimony, overruled. *Held* that, the ruling being supported by the evidence, afforded the defendant no ground of exception.

OPINION OF THE COURT BY GALBRAITH, J.

The defendant was charged by indictment with the offense of assault with intent to murder and on a trial thereof was adjudged guilty.

The jury might have found from the evidence offered in support of the charge the following facts, namely: That for more than one year prior to the 11th day of June, 1902, the prosecuting witness, Fong Quin, had been living in a rooming house on

Vineyard Street, Honolulu, with a Chinese woman as his mistress; that this woman had formerly been supported by and had lived with the defendant; that the defendant claimed that the woman was his wife and that she denied a marriage with the defendant; that on the 11th June, 1902, Fong Quin returned to his rooms about 11 o'clock a. m. with the intention of accompanying the woman to the horse races; that when he arrived at the house the defendant was in one of the rooms with the woman but immediately walked out on hearing Fong Quin enter and in about 15 minutes the defendant came back into the room, having a revolver in his hand and without speaking a word pointed it towards Fong Quin and fired; that Fong Quin ran out of the room and house pursued by the defendant, who fired four or five times, striking Fong Quin twice, but that neither of the wounds proved fatal.

The defendant was the only witness offered in behalf of the defense and no attempt was made, other than by cross-examination of the witnesses for the prosecution, to overcome or contradict the testimony introduced in support of the charge.

During the presentation of the evidence for the Territory the Chinese woman who was in the room when the shooting commenced was offered as a witness. An objection was made to her competency on the ground that she was the wife of the defendant, and, under our statute (Sec. 1416 C. L.) an incompetent witness. By agreement of counsel the jury was sent out and the question of the competency of the witness was submitted to the Judge "as a question of fact." The exceptions relied on in this Court were taken during the trial of this question and are (1) To the ruling of the Judge finding that the woman was not the wife of the defendant and was a competent witness, (2) To the ruling admitting and rejecting certain testimony.

The rule of evidence is that there is no presumption of incompetency and that the party insisting on the disability of the witness on account of the marriage relation must prove that the relation of husband and wife exists. 3 Jones on Evidence, Sections 762, 767, 777, 791, 794.

The burden was clearly on the defendant to prove that the witness was his wife. Apparently this burden was assumed at the trial although it is denied in his brief. An attempt was made to prove a marriage at Hongkong according to Chinese custom followed by cohabitation there and in Honolulu. Evidence at length was given to show what was essential to constitute a marriage under custom in China. The Judge found that there was a failure to show a compliance with the essentials of marriage under this custom and that a marriage had not been proved and that the witness was competent.

The defendant testified to the marriage at Hongkong and another witness swore that he attended the marriage feast. The woman testified that she had never been married to the defendant and that the first time she ever saw him was the day after she arrived at Honolulu, about 12 years ago, when he was presented to her as her protector by the steward of a sailing vessel in whose care she came to the Islands; that the defendant paid this steward $250.00 for bringing her and that she then went to live with the defendant and continued to live with him for five years thereafter and as long as he would support her; that when the defendant refused her support she took up with another Chinaman and lived with him for a year and until he returned to China when she became intimate with a Chinese actor and after he deserted her she was taken up by Fong Quin and had lived with him for more than a year prior to the shooting.

The evidence sustains the finding of the trial judge that there was a failure of proof of a marriage between the woman and the defendant according to Chinese custom. "Whether a witness is qualified to be sworn as such is always a question for the Court." Thompson on Trials, Sec. 323. Greenleaf on Evidence, Sec. 49 (8le, 16th Ed.). This exception is not well taken.

The evidence would not warrant a finding that there was a common law marriage between the parties or support a presumption of marriage from cohabitation and general reputation recognized by some of the reported cases. The witness under

the evidence in the record was entirely too promiscuous in cohabiting for this presumption to avail the defendant.

It seems to have been assumed by both sides and the court below that the witness would have been incompetent under Section 1416, C. L., if she were the wife of the defendant. As it is not necessary to a disposition of the exception we refrain from expressing an opinion on the correctness of this assumption.

It does not appear that the defendant was prejudiced by the other rulings of the trial judge excepted to at the hearing of this question, for instance, the defendant was asked on cross-examination if he knew anything "about a custom in China by which a man gives to another man money and receives in return a woman." This question was objected to as "immaterial." The objection being overruled the witness answered. "I don't know any such custom." The evidence given by the expert produced by the defendant showed that according to Chinese custom a "go-between" was usually employed to find out the age of the girl and to arrange the details of the marriage, one of which was the transfer of a sum of money from the prospective bridegroom to the parents of the bride elect. It is said that the money was to be used in the purchase of a pig and "wine and cake" for the marriage feast, an essential element of every marriage according to Chinese custom.

The court seems to have given the defendant rather wide latitude in his attempt to prove the Chinese custom of marriage and his compliance therewith. We are convinced that the witness was competent and that there was no error in receiving her testimony.

The exceptions are overruled.

*Kinney & McClanahan* for the prosecution.

*Frank Andrade* for the defendant.